1   ROSS & MORRISON
    Gary B. Ross (SBN 121691)
2   Andrew D. Morrison (SBN 144216)
    315 S. Beverly Drive, Suite 410
3   Beverly Hills, CA 90212
    Ph.: 310.285.0391; Fax: 310.285.6083
4   www.rossandmorrison.com

5   Attorneys for Plaintiff

6

7

8               UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10  RONALD KOPSTEIN,            )   CASE NO. CV14-06561-GW(AGRx)
                                )
11              Plaintiff,      )   SECOND AMENDED COMPLAINT FOR
        v.                      )   DAMAGES -- CLASS ACTION:
12                              )
    MICHAELS STORES, INC., and Does )   1.   Fraud
13  1-10,                       )   2.   Negligent Misrep.
                                )   3.   Promissory Estoppel
14              Defendants.     )   4.   Breach of Contract/
                                )        Implied Covenant
15                              )   5.   Wrongful Termination in
                                )        Violation of Public
16                              )        Policy
                                )   6.   Viol. of Cal. Labor Code
17                              )        § 1102.5 (Retaliation)
                                )   7.   Unfair Business Practices
18                              )        (Cal. Bus. & Prof. Code
                                )        §§ 17200, et seq.)
19                              )
    _____ )   DEMAND FOR JURY TRIAL
20
        Plaintiff herewith submits his Second Amended Complaint.[1]
21

22

23  _____

24      [1]     This amended complaint is filed pursuant to the Court's
            orders dated 11/13/14, 11/14/14, 12/1/14 and 12/8/14,
25          rejecting certain alternative allegations, and dismissing
            specified claims, parties, and claims for relief with
26          prejudice (while permitting amendment of the remainder of
            the challenged claims).  By filing this amendment,
27          plaintiff intends to preserve for appeal all matters
            determined and dismissed with prejudice.  Lacey v.
28          Maricopa County, 693 F.3d 896, 928, (9th Cir. 2012) (en
            banc).

                                    1

SUMMARY OF CLAIMS

A.   **Defendant's fraudulent vacation practices** **(Representative Claims)**.  Plaintiff brings this action individually and as class representative for fraud and related claims, based on the following:  Defendant maintains a vacation policy which they administered in a fraudulent and misleading manner.  In particular, defendant knowingly communicated false and inaccurate bi-weekly Itemized Wage Statements to employees which misrepresented/understated the vacation accrual which defendant calculated internally, causing employees to unknowingly forfeit accrued vacation time which defendant had secretly "capped."  See Ex. B (Kopstein summary of accrual).  Plaintiff on behalf of himself, and as class representative for other current and former California employees of defendant, seeks recovery, including an award of damages to compensate plaintiff and other employees for such forfeited time.

B.   **Wrongful termination of plaintiff (Individual Claims)**. In addition, plaintiff brings this action individually for wrongful termination/retaliation, based on the following:  After a successful 14-year career with Michaels, plaintiff raised concerns to corporate management regarding the defendant's forfeiture of vacation time due to misleading/fraudulent communications. In response/retaliation, just three weeks later, defendant terminated plaintiff for making such complaints, based on exaggerated/pretextual grounds.

Plaintiff alleges, based on personal knowledge and/or information and belief:

/ / /

2

SAC 12-22-14.wpd

<u>IDENTIFICATION OF PARTIES</u>

1.  <u>Plaintiff</u>.  Plaintiff Ronald Kopstein ("Kopstein") is an individual residing in Los Angeles County, California.

2.  <u>Defendant Michaels Stores, Inc</u>.  Defendant Michaels Stores, Inc. (sometimes also known as "Michaels Arts and Crafts" and/or "Michaels") ("Michaels" or "defendant"), is a corporation doing business in California, with its principal California office in Los Angeles County, California, and its principal offices in Texas.

3.  <u>Doe defendants</u>.  Defendants Doe 1-10 are named fictitiously.  Plaintiff will amend to plead the names of such defendants when known.  Each party named above, and each Doe defendant, was responsible for the events and damages alleged herein, including, without limitation, on the following bases:

a.  <u>Does 1-6</u>.  Doe defendant(s) 1-6 consist of corporate or other entity(ies) which at relevant times:

(1) Were division(s), subsidiary(ies), parent company(ies), affiliate(s), successor(s), and/or assign(s) of Michaels, which maintained the same or substantially similar vacation policies and practices as those described below.

(2) Were alter egos of Michaels, in that at all relevant times there existed, a unity of ownership and interest between and/or among them, such that any individuality and separateness between said defendants has ceased, and defendants are the alter ego(s) of one another.  The defendants exercised domination and control over one another, to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist.  Adherence to the

SECOND AMENDED COMPLAINT

1 fiction of separate existence of the defendants would permit

2 abuse of the corporate privilege and would sanction fraud and

3 promote injustice; and/or

4         (3) Were and/or are the agent of, and/or acted

5 under the direction, control and/or supervision of Michaels,

6 and/or any entity(ies) described in paragraph 3(a)(1) or (2),

7 above, and in doing the acts alleged, acted within the course and

8 scope of such agency, and/or otherwise liable for plaintiff's

9 damages.

10     d.  <u>Does 7-10</u>.  Doe defendant(s) 7-10 consist of

11 individual(s) who were the agent or employee, and/or acted under

12 the direction, control and/or supervision of Michaels and/or any

13 entity(ies) described in paragraph 3(a), above, and in doing the

14 acts alleged, acted within the course and scope of such agency

15 and employment, or otherwise liable for plaintiff's damages.

16     4.  <u>"Defendant</u>."  The named defendant and Doe defendants

17 are sometimes hereafter referred to (collectively and/or

18 individually) as "defendants" or "defendant."

19                 <u>FACTS COMMON TO ALL CAUSES OF ACTION</u>

20     5.  <u>Defendant's statements to employees of accrued vacation</u>

21 <u>time</u>.  At all relevant times, defendant advised its California

22 employees of their vacation entitlement/accrual, through its

23 words and conduct.  This included, without limitation, each bi-

24 weekly pay period, defendant provided each California employee

25 with an Itemized Wage Statement, which included an entry which

26 appeared to be, and was represented as, that employee's accrued

27 vacation time to date, together with other wage information. See

28 Ex. A - Exemplar Itemized Wage Statement for plaintiff (listing a

"Balance" of 152.31 accrued vacation hours as of 7/20/13 under "Paid Time Off"/"California Vac Tier 2 & 3").

6.   <u>Authoritative communication</u>. The amount of the employee's accrued vacation was communicated on the Itemized Wage Statement (Ex. A), an official company pay record entitled "Advice of Deposit." This document contained official language such as "Note to financial institutions: This electronic representation of Ron Kopstein's paycheck was provided from Michaels Stores, Inc.'s Payroll WorkCenter system on 8/13/2013." The Itemized Wage Statement (Ex. A) contained other apparently reliable official financial information, including all of the wage-related information specified (and statutorily mandated) under Cal. Labor Code § 226.[2]   The effect of such apparently

---

[2]   Labor Code 226 (a) provides:
Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer. . . and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . . The deductions made from payment of wages shall be recorded

5

authoritative and official communication was to cause employees

to reasonably believe that the vacation information listed

thereon (like the other information) was accurate, and a true

statement of their accrued vacation time as of the ending period

reflected on the Itemized Wage Statement, which could be relied

on in planning and scheduling vacations.

7.   <u>Confirmation of amount</u>. In addition, store employees

could access vacation information through company-provided

software (locally at the store or remotely), to check on and/or

verify the amount of accrued vacation (which occurred

periodically, e.g., where an employee was making arrangements

with a supervisor to take vacation, and they would together check

on how much was accrued; or if an employee was checking on the

amount in anticipation of an anniversary date to avoid losing any

vacation time due to a "cap").  When this was done, the amount

reflected was the same as the amount which appeared on the

Itemized Wage Statement.  Through this process, employees further

confirmed their reasonably understanding and belief that the

amount of the employee's vacation accrual appearing on the

Itemized Wage Statement was accurately calculated and accurately

stated, and that employees could and should rely on same in

planning and arranging their vacation schedules.

8.   <u>No contrary statements regarding amount of accrued</u>
<u>vacation</u>. Defendant did not advise its employees, including

plaintiff, that the amount of vacation accrual stated in the

Itemized Wage Statement was not accurate, or that it could not be

in ink or other indelible form, properly dated, showing
the month, day, and year . . ."

6

SECOND AMENDED COMPLAINT

relied upon.  Defendant did not communicate to its employees, including plaintiff, any other amount(s) which purported to be the amount of vacation accrual, other than that stated in the Itemized Wage Statement.

9.  <u>Summary of Wage Statements (Ex. B, Column I)</u>.  Attached as Exhibit B is a list of pay periods for from May 7, 2005 through September 11, 2013.  Column A is the pay period, and Column I is the amount reflected on plaintiff's Itemized Wage Statement.

10.  <u>Caps on accrual</u>.  At hire, defendant informed its employees on the amount of vacation time accrued per year, and caps on accrual, depending on years of service, as follows:

| Year | Annual Accrual | Cap |
|------|----------------|-----|
| 1 | 40 hours (0.154 hours/day)[3] | N/A |
| 2-4 | 80 hours (0.308 hours/day) | 160 hours |
| 5-19 | 120 hours (0.462 hours/day) | 240 hours |
| 20+ | 160 hours (0.615 hours/day) | 320 hours |

This information was communicated, among other ways, through company handbooks.  See Ex. C hereto ("Associate Handbook" - selected pages) and Ex. D hereto ("Associate Handbook -- Supplement for Michaels Store Employees (California)" - selected pages, at p. 5). Employees utilized this information, together with their current accrual information as reflected on their itemized wage statements, to arrange their vacation time, so as to avoid loss of time to the cap whenever possible (i.e., so that

---

[3]   This is apparently calculated based on a 260-day year (i.e., 26 pay periods of 10 working days); e.g., 40 hours ÷ 260 = 0.154.

SECOND AMENDED COMPLAINT

1    as of the next anniversary date, the accrued vacation would be

2    sufficiently below the "cap" to permit full accrual).[4]

3         11.  Defendant's secret internal vacation accounting

4    practices.  Unbeknownst to plaintiff and other employees,

5    defendant internally calculated vacation accrual, using a

6    continuous accrual method, and arriving at different amounts for

7    what it deemed "actual" accrual. See Ex. B, column H.  This

8    accounting was entirely internal -- defendant and its agents

9    (including, without limitation, Judy Waymire) did not apprise

10   employees of this calculation, nor of how much time vacation time

11   had been accrued according to their internal calculation, nor of

12   when the employee was nearing or had reached their "cap" using

13   this internal calculation (and thus forfeiting vacation time);

14   nor even that this phenomenon of  forfeiture between anniversary

15   dates even existed.[5]  Nor did defendant apprise employees that

16

17         [4]    These handbooks (Exs. C and D) appear to be ambiguous as
18            to the precise methodology defendant would utilize (i.e.,
             they could be read as accruing each year at the rate
19            specified but only "granted" once a year, i.e., "on each
             anniversary; or, alternatively, as granted incrementally
20            "daily;" the latter reading requiring the phrase
             "Eligible full-time associates are granted vacation on
21            each anniversary" be disregarded).  In any event, the
             handbooks, which were provided at the outset of
22            employment without explanation, did not effectively
             advise employees that the vacation accrual information
23            stated in the Itemized Wage Statements was incorrect, or
             that it should not be trusted or relied on in any way, or
24            that defendant secretly considered such communications to
             be meaningless and unrelated to what defendant secretly
25            calculated to be the "actual" accrual.

26         [5]    It should also be noted that, to the extent Ex. D, p. 5
             continuous/"per day" language is deemed to be
27            defendant's "actual" vacation policy, defendant's
             internal accounting (Ex. B, column H) **was not an accurate**
28            **accounting** of that policy. Contrary to the "per day"

8

SECOND AMENDED COMPLAINT

SAC 12-22-14.wpd

1   the accrued vacation shown in the Itemized Wage Statement did not

2   reflect defendant's internal accounting, and that defendant

3   considered those numbers to be meaningless vis-a-vis defendant's

4   internal calculations -- they were never used by defendant, and

5   had nothing to do with, the internal calculations defendant

6   secretly used to calculate vacation provided to employees.[6]

methodology in Ex. D, defendant's internal calculation used a bi-weekly, <u>not</u> daily, calculation (Ex. B, column B), thus shorting employees, including plaintiff, their final days of accrual (entitled to "0.462 hours/**day**" under that policy) (Ex. B, column C, lines 239-240: no accrual from 8/31/13-9/11/13). Thus, **defendant violated the daily accrual policy in this way as well,** which would support claims for violation of Labor Code § 227.3, § 203, and PAGA. However, plaintiff has been precluded from asserting such claims (See 11/14/14 Order, Docket no. 22, dismissing claims with prejudice), and so must preserve this issue for appeal only. See fn 1, above.

[6]   Plaintiff believes that defendant's handbooks (Exs. C and D) are ambiguous as to whether vacation accrued on a Annual/Anniversary basis (i.e., accrued each year in the amount specified only "granted" once a year, i.e., "on each anniversary") or on a Continuous/Daily basis (i.e., accrued and was awarded incrementally "daily," but disregarding the phrase "Eligible full-time associates are granted vacation on each anniversary"). See Ex. D, p. 5. Moreover, the fact that there are <u>two charts</u> - one for associates, listing both daily and yearly amounts, and one for "managers" listing only yearly amounts. Thus, <u>in the alternative</u> to the theories expressed in the body of the complaint, plaintiff contends that the legal effect of the totality of defendant's communications (including the ambiguity of the handbook and the clarity of the Itemized Wage Statement amounts) was to establish an <u>actual</u> policy providing for Annual/Anniversary accrual, as to some or all of its employees, which defendant violated by not keeping correct totals (notably, Ex. B, column I -- does not reflect any legal vacation policy); thus supporting claims for violation of Labor Code § 227.3, § 203, and PAGA. However, plaintiff has been precluded from asserting such claims (See 11/14/14 Order, Docket no. 22, dismissing claims with prejudice), and so must preserve this issue for appeal only. See fn 1, above.

9

SAC 12-22-14.wpd

12.   <u>Summary/Example (Ex.B): Ronald Kopstein Vacation</u>
<u>Accrual 05/07/05-09/11/13</u>. As an illustration of the foregoing,
attached as Exhibit B is a summary which plaintiff is informed
and believes describes plaintiff Kopstein's vacation accrual for
from May 7, 2005 through September 11, 2013:[7]

- <u>Column A</u> is the pay period.
- <u>Column B</u> reflects how much Kopstein accrued each pay
  period according to defendant's software (4.62 hours).
- <u>Column C</u> reflects how much of Column B, if any, was
  credited to Kopstein, depending on defendant's
  calculation of whether Kopstein had reached his maximum
  accrual of 240 hours (reflected in Column H): If Column
  H was "full" at 240 hours (as shown, e.g., in rows 2-8,
  16-24, etc.), no more accrual is credited.
- <u>Column D</u> is a running total of hours lost due to the
  secret "capping" of Column C.
- <u>Column E</u> is a running total of credited hours (Column
  C) since the last pay period; used by defendant for the
  "annual reset" appearing on the employees' anniversary
  pay stub (but irrelevant/not used by defendant in their

---

[7]   It should be noted that at this point no discovery has
been conducted and plaintiff's information and belief is
based on his best understanding based on the partial
information available at this time.  In the event further
discovery and analysis reveal that plaintiff's
understanding of defendant's internal methodologies was
incorrect, plaintiff reserves the right to amend the
complaint.   In particular, because plaintiff was
terminated during the pay period of his anniversary date,
his understanding may be incomplete as to defendant's
calculations and what defendant considers to the be
"actual" policy.

SECOND AMENDED COMPLAINT
SAC 12-22-14.wpd

internal accrual accounting).

- Column F is vacation taken during the period, which is deducted from both defendant's internal accrual (Column H) and what is published on pay stubs (Column I).

- Column G is an annual accrual, the total of hours credited (Column D) since the last anniversary.  At the employee's anniversary, this amount (rather than the full amount available, e.g. 120 hours), is added to the last amount shown on the employee's pay stub for the prior pay period.  This does not impact defendant's internal accounting (Column H).

- Column H is defendant's secret internal calculation, based a running total of bi-weekly accrual credited (Column C), minus vacation taken (Column F), up to a maximum of 240 hours.

- Column I is defendant's published accrual numbers, provided in employees' pay records, reflecting the prior years accrued amount, less vacation taken (Column F); and each year replenished with the amount credited since the prior anniversary (Column G = annual sum of Column D).

/ / /

/ / /

/ / /

SECOND AMENDED COMPLAINT

SAC 12-22-14.wpd

<u>CLASS ACTION ALLEGATIONS</u>

13.   <u>Class action proper [L.R. 23-2.1 and F.R.Civ.P. 23]</u>:
This case is properly maintainable as a class action pursuant to
F.R.Civ.P. 23(a) and F.R.Civ.P. 23(b)(3) and California Code of
Civil Procedure § 382.[8]

14.   <u>Class definition [L.R. 23-2.2(a) and F.R.Civ.P.</u>
<u>23(c)(1)(B)]</u>:  The class that plaintiff represents, pursuant, is
composed of all current and former employees of defendant who
worked for defendant in the State of California during the class
period and had vacation time capped (and thus forfeited vacation
time by no further accrual) while the accrued vacation appearing
on the bi-weekly paystub statements did not show the were being
capped; and/or otherwise suffered prejudice and/or harm due to
the discrepancies and inaccuracies in defendant's method of
calculating and/or communicating its vacation accrual policies
and practices.

15.   <u>Numerosity [L.R. 23-2.2(b) and F.R.Civ.P. 23(a)(1)]</u>:
The number of class members is unknown at this time; however, it
is estimated that the approximate size of the class will be many
hundreds, or thousands, of people (e.g., defendant's Notice of

---

[8]   In addition, plaintiff contends that class status is
appropriate pursuant to F.R.Civ.P. 23(b)(2), in that
defendant has acted (by maintaining its
improper/fraudulent vacation practices) and refused to
act (by refusing to rectifying its improper/fraudulent
vacation practices, e.g., minimally, to cease providing
inaccurate information to employees) on grounds that
apply generally to the class, so that final injunctive
relief or corresponding declaratory relief is appropriate
respecting the class as a whole.  However, the Court has
dismissed plaintiff's claim for injunctive relief with
prejudice, foreclosing this remedy.  See fn. 1, above.

SAC 12-22-14.wpd

1   Removal estimates approximately 13,363 former employees since

2   July 10, 2011). The identity and number of the class members are

3   available from defendant's business records.

4       16.   Adequacy [L.R. 23-2.2(c) and F.R.Civ.P. 23(a)(4)]:

5   Plaintiff, as a representative parties, will fairly and

6   adequately protect the interests of the class, by vigorously

7   pursuing this suit through attorneys who are skilled and

8   experienced in handling civil litigation of this type.

9       17.   Commonality [L.R. 23-2.2(d) and F.R.Civ.P. 23(a)(2) and

10  (a)(3)(A)]:   The common issues of fact and law which predominate

11  in the case involve defendant's vacation policy and practices

12  (common issue of fact), and whether such practices violated the

13  law as alleged below (common issues of law).  Proof of this

14  common state of facts and assertions of law will establish the

15  right of each class member to recover from Defendant.  Further,

16  the prosecution of separate actions by the individual class

17  members, even if possible, would create a substantial risk of

18  inconsistent or varying adjudications.

19      18.   Typicality [L.R. 23-2.2(e) and F.R.Civ.P. 23(a)(3)]:

20  Plaintiff's claims are typical of the claims of other class

21  members, in that plaintiff was subject to the same methodology of

22  vacation treatment as other members of the class, and suffered

23  the same harm, i.e., inadvertent loss of accrued vacation time

24  due to defendant's policies and practices.

25      19.   Superiority [L.R. 23-2.2(f) and F.R.Civ.P. 23(b)(3)]:

26  Class action status is appropriate in this case because, as set

27  forth above, and questions of law or fact predominate over

28  individual questions, and a class action is superior to other

SECOND AMENDED COMPLAINT

1    available methods for fairly and efficiently adjudicating the

2    controversy, including the following: here is an ascertainable

3    class and a well-defined community of interest among the class

4    members.  Further, given the size of the class, proceeding with a

5    class action in lieu of individual claims will provide

6    substantial benefits to both the litigants and the Court.  The

7    persons in the class are so numerous, consisting of hundreds or

8    thousands of individuals, that joinder of all such persons is

9    impracticable.  Moreover, this case involves a large corporate

10   employer and a large number of individual employees with many

11   relatively small claims.  If each current and former employee

12   were required to file an individual lawsuit, the corporate

13   defendant would necessarily gain an unconscionable advantage

14   since they would be enabled to pursue a "divide and conquer"

15   strategy designed to exploit and overwhelm the limited resources

16   of each individual plaintiff with its vastly superior financial

17   and legal resources.  Further, in a class action proceeding,

18   class members who are still employed by defendant can remain

19   anonymous yet have their rights vigorously pursued by plaintiff;

20   particularly as injunctive relief.  Absent the anonymity provided

21   by a class action, current employees of defendant might avoid

22   filing actions against their current employer for real and

23   justifiable fear of retaliation and permanent damage to their

24   careers with the defendant or in the industry. To plaintiff's

25   understanding this is the only action pending concerning the

26   subject matter of this claim.  Resolving these claims in a single

27   consolidated forum is preferable than in separate fora.  The

28   particular court in which this action is pending is also handling

1  Multi-District Litigation involving Michaels.  Conversely,

2  plaintiffs is not aware of any difficulty in management which

3  would preclude the maintenance of this litigation as a class

4  action.

5      20.   Notice contemplated [L.R. 23-2.2(g) and F.R.Civ.P. 23]:

6  The names and addresses of the class members are available from

7  defendant's business records.  Notice will be provided to class

8  members via first class mail, email, text, social media, and/or

9  other appropriate means, and by a form of notice similar to those

10  customarily used in class action lawsuits of this nature.

11                    FIRST CAUSE OF ACTION

12                     Fraud and Deceit

13      By Plaintiff Individually and as Class Representative

14                    Against All Defendants

15      21.   Paragraphs 1-20 are incorporated.

16      22.   Misrepresentations/falsity.  The amount of vacation

17  stated on the employees itemized wage statement (Ex. B, column I)

18  was not accurate according to defendant's internal calculations

19  (Ex. B, column H) , and specifically understated the accrual

20  which defendant calculated internally.  Lazar v. Sup. Ct.

21  (Rykoff-Sexton, Inc.), 12 Cal. 4th 631 (1996).

22      23.   Material omissions.  In addition, defendant

23  concealed/omitted material information about employees'

24  information, including that it considered the vacation amounts

25  provided on the Itemized Wage Statements to be inaccurate, and

26  that it kept secret accounting which it considered to be

27  accurate, as described in paragraphs 8, and 11, above.

28      24.   Who made the representations/omissions.  Defendant, by

15

SECOND AMENDED COMPLAINT

and through its agent(s) and employee(s) responsible for
communicating vacation entitlement/accrual vacation accrual
information to employees, and specifically for implementing the
procedures/ software which generates (a) the entry for vacation
on the Itemized Wage Statement issued to employees (e.g., Ex. A,
and Ex. B, column I), and (b) defendant's internal calculations
of accrued vacation (e.g., Ex. B, column H); on information and
belief consisting of Judy Waymire and other members of
defendants' corporate management/human resources, to be further
identified through discovery.

25. <u>Authority/Scope</u>.  Judy Waymire and other members of
defendants' corporate management/human resources identified in
the prior paragraph had job duties which included communicating
vacation entitlement/accrual vacation accrual information to
employees  in communicating to employees, and thus were acting
within the course and scope of their authority in making the
representations and omissions described.

26. <u>To whom made</u>.  Defendant's representations and
omissions were made to plaintiff and other California employees
of defendant who received Itemized Wage Statements with vacation
information which did not match defendant's internal vacation
calculations.

27. <u>By what means communicated</u>. Defendant's representations
were made in bi-weekly Itemized Wage Statements as described in
paragraphs 5-6, above, and via computer access as alleged in
paragraph 7, above.

28. <u>When made</u>.  The communications were made every pay
period, which periods are reflected on Ex. B, column A; each

SECOND AMENDED COMPLAINT

1   communication was issued on a date certain within a few days of

2   the end of the pay period (e.g., as reflected in Ex. A, 7/25/13

3   for period ended 7/20/13), the exact dates and times to be

4   established in discovery.

5       29.  Where made.  On information and belief, the statements

6   were issued from defendant's corporate headquarters in Texas, and

7   communicated/transmitted to plaintiff and other employees

8   employed at various store locations throughout California.

9       30.  Statements/knowledge of falsity.  Defendants made the

10  above statements, representations and/or omissions without belief

11  in their veracity, without intention of fulfilling their

12  promises, and/or with reckless disregard as to their truth;

13  specifically including defendant's understanding and awareness

14  that the vacation amounts set forth in the Itemized Wage

15  Statements did not accurately reflect what defendant understood

16  and believed to be the true amount of accrued vacation.

17      31.  Intent.  Defendants made these representations or

18  omissions with the intent of inducing employees reliance,

19  including, without limitation, inducing employees to plan

20  vacation scheduling based on accrued vacation information

21  provided to them as reflected on the Itemized Wage Statements.

22      32.  Reliance.  Plaintiff and class members were unaware of

23  the true state of facts and/or that defendants were performing

24  secret calculations resulting in a forfeiture of vacation time.

25  Plaintiff and class members reasonably relied upon defendant's

26  misrepresentations, omissions and promises as set forth above,

27  including, without limitation, by scheduling vacation time based

28  on the information in the Itemized Wage Statements, in a manner

17

SECOND AMENDED COMPLAINT

1   that, based on defendants clandestine calculations, resulted in a

2   forfeiture of vacation time, i.e., causing employees to

3   unknowingly forfeit accrued vacation time which defendant had

4   secretly "capped."  As a result of the foregoing, employees were

5   misled by relying on the understated amounts of the accrued

6   vacation balance communicated to them by defendant (rather than

7   the secret, higher balances defendant used but did not

8   communicate to employees), and would unknowingly forfeit/lose

9   vacation time, rather than arranging vacation time so as to avoid

10  such forfeiture.  With reference to the Kopstein Summary (Ex. D),

11  this is shown in the multiple entries in which Kopstein

12  (unbeknownst to him) was losing accrual opportunity, e.g., e.g.,

13  rows 2-8, 16-24, etc.; resulting in a loss of 256.84 hours in the

14  period from May 7, 2005 through his termination.

15      33.  <u>Causation</u>.  As a result of defendant's conduct,

16  plaintiff and class members suffered damages as alleged

17  including, without limitation, loss of vacation time accrual.

18      34.  <u>Damages</u>.  Plaintiff, on behalf of himself and other

19  class members, is/are entitled to damages including full

20  compensation for such lost time/accrual, together with any and

21  all appropriate penalties, damages, and other relief, to the full

22  extent permissible by law.

23  / / /

24  / / /

25  / / /

26

27

28

---

18

SECOND AMENDED COMPLAINT

SECOND CAUSE OF ACTION

Negligent Misrepresentation

By Plaintiff Individually and as Class Representative

Against All Defendants

35.  Paragraphs 1-30 and 32-34 are incorporated.

36.  <u>Negligence</u>.  In the alternative to paragraph 31, above, such statements, misrepresentations, and/or omissions were made without reasonable basis for believing them to be true and/or without intention of performing.

THIRD CAUSE OF ACTION

Promissory Estoppel

By Plaintiff Individually and as Class Representative

Against Defendant Michaels and Does 1-6

37.  Paragraphs 1-34 are incorporated.

38.  <u>Clear promise</u>.  As set forth above, including in paragraphs 5-7, the accrued vacation time represented in the Itemized Wage Statements constituted a clear and unambiguous statement promise that employees had the amount of accrued vacation stated.

39.  <u>Reliance</u>. Plaintiff and others similarly situated reasonably relied on such promise, including as described in paragraph 32, above.

40.  <u>Reasonable and foreseeable</u>. Defendant, who was aware that it considered the accrued vacation time represented in the Itemized Wage Statements to be inaccurate, and that it kept a separate, undisclosed calculation of such time, could reasonably foresee that such reliance would occur.

41.  <u>Injury</u>. Plaintiff and others similarly situated were

19

SECOND AMENDED COMPLAINT

1 injured by such reliance, as set forth in paragraphs 33 and 34,

2 above.

FOURTH CAUSE OF ACTION

Breach of Contract/Breach of Implied Covenant

By Plaintiff Individually and as Class Representative

Against Defendant Michaels and Does 1-6

7 42.   Paragraphs 1-34 are incorporated.

8 43.   <u>Contract</u>.  Plaintiff and class members had an agreement

9 with defendant, part written (including Exs. A and B and itemized

10 wage statements such as Ex. C), part oral and/or part implied-in-

11 fact, including, among other terms, the accrual of vacation would

12 be accurately communicated to employees, and that the vacation

13 amounts in the Itemized Wage Statements were accurate.

14 44.   <u>Implied covenant</u>.  In addition to the express and

15 implied-in-fact agreement alleged above, the employment contract

16 between plaintiff/class members and defendant included an implied

17 covenant of good faith and fair dealing requiring each party to a

18 contract to act with fairness and in good faith relative to the

19 other party, and prohibiting the parties from taking any action

20 designed to prevent the other from enjoying the benefits of the

21 contract, and to refrain from hindering or impeding the other

22 party in the performance of the contract.

23 45.   <u>Breach</u>.  Defendant breached its express and implied

24 contractual obligations by engaging in practices which deprived

25 plaintiff and class members of vacation accrual, as set forth

26 above, by (a) failing to provide vacation accrual amounts it

27 considered accurate, (b) failing to honor the e the vacation

28 amounts in the Itemized Wage Statements, and/or (c) by

SECOND AMENDED COMPLAINT

SAC 12-22-14.wpd

1    misleadingly providing employees with false accrual numbers so as

2    to cause employees to unknowingly forfeit vacation time.

3        46.  <u>Damages</u>.  Plaintiff, on behalf of himself and other

4    class members, is/are entitled to damages including full

5    compensation for such unpaid amounts, together with any and all

6    appropriate penalties, damages injunctive relief, and other

7    relief, to the full extent permissible by law.

8                        <u>FIFTH CAUSE OF ACTION</u>

9            Wrongful Termination Violation of Public Policy

10                     By Plaintiff Individually

11                Against Defendant Michaels and Does 1-6

12       47.  Paragraphs 1-46 are incorporated.

13       48.  <u>Plaintiff's hiring and employment</u>.  Plaintiff was hired

14   by defendant as an assistant manager in or about September, 1999.

15   Plaintiff successfully worked for defendant for 14 years,

16   attaining the role of store manager

17       49.  <u>Plaintiff's complaints</u>.  In mid-August, 2013, plaintiff

18   raised concerns to corporate management, including, without

19   limitation, Patricia Ary and Judy Waymire, who had been

20   responsible for communications to plaintiff regarding his accrued

21   vacation, regarding the defendant's forfeiture of employees

22   vacation time, which is illegal under California law.

23       50.  <u>Plaintiff's termination</u>.  In response, just three weeks

24   later, on September 9, 2013, plaintiff was abruptly terminated,

25   on false and/or pretextual grounds.  Plaintiff's good faith

26   opposition to defendant's illegal practices was a substantial

27   motivating factor in defendant's decision to retaliate against

28   plaintiff, and terminate plaintiff's employment.

SECOND AMENDED COMPLAINT

SAC 12-22-14.wpd

51. <u>Public policy</u>.  Public policy of the State of California prohibits, negative job action in retaliation for good faith complaints regarding, raising issues, and/or opposition to, inter alia, illegal wage and hour practices, including, without limitation failure to pay vacation pay, and/or false and misleading vacation pay practices.

52. <u>Defendant's violation</u>.  Defendant's conduct in terminating plaintiff on the basis of the foregoing violates said public policy(ies).

53. <u>Economic damages</u>.  As a consequence of defendant's conduct, plaintiff has suffered and will suffer harm, including, without limitation, lost past and future income and employment benefits; and damage to career, in a sum to be proven at trial.

54. <u>Non-Economic damages</u>.  As a consequence of defendant's conduct, plaintiff has suffered and will suffer psychological and emotional distress, including physical symptoms, in a sum to be proven at trial.

55. <u>Punitive damages</u>.  Defendant is guilty of oppression, fraud or malice under California Civil Code Section 3294, so as to entitle plaintiff to an award of exemplary/punitive damages.

SIXTH CAUSE OF ACTION

Viol. of Cal. Labor Code § 1102.5

By Plaintiff Individually

Against Defendant Michaels and Does 1-6

56. Paragraphs 1-55 are incorporated.

57. Defendant's policies/practices and conduct in terminating and retaliating against plaintiff for opposing defendant's misconduct as alleged violates Cal. Labor Code §

1   1102.5 and Cal. Labor Code § 98.6.

2                   SEVENTH CAUSE OF ACTION

3         Viol. of Cal. Bus. & Prof. Code §§ 17200, et seq.

4         By Plaintiff Individually and as Class Representative

5              Against Defendant Michaels and Does 1-6

6         58.   Paragraphs 1-57 are incorporated.

7         59.   Fraudulent Business Practice.  Defendant's conduct, as

8    alleged, constitutes unfair competition as a fraudulent business

9    act or practice, in violation of Cal. Bus. and Prof. Code §§

10   17200, et seq. (Unfair Competition Law or "UCL"), including,

11   without limitation, by misleadingly providing plaintiff, and

12   other employees, with false and misleading vacation accrual

13   numbers so as to cause plaintiff, and other employees, to

14   unknowingly forfeit vacation time to which they would otherwise

15   vest, as set forth above.

16        60.   Unfair business practice.  Defendant's conduct, as

17   alleged, constitutes unfair competition as a fraudulent business

18   act or practice, in violation of the UCL, including, without

19   limitation, that by engaging in the foregoing conduct,

20   defendant's procured an unfair business advantage over

21   competitors who did not engage in deceptive practices re: same.

22        61.   Damages.  Plaintiff, on behalf of himself and other

23   class members, is/are entitled to damages including full

24   compensation for such lost/forfeited vacation, together with any

25   and all appropriate penalties, damages injunctive relief, and

26   other relief, to the full extent permissible by law.

27   / / /

28   / / /

                              23
                    SECOND AMENDED COMPLAINT

WHEREFORE, plaintiff prays for judgment as follows, individually, and on behalf of the class set forth above:

1.   For compensatory damages, according to proof;

2.   For punitive damages, according to proof;

3.   For all appropriate penalties or assessments, including, without limitation, civil penalties pursuant to Cal. Labor Code § 98.6(c) and Cal. Bus. and Prof. Code § 17206;

4.   For reinstatement of plaintiff to his former position, including, without limitation, pursuant to Cal. Labor Code § 98.6(b) and Cal. Bus. and Prof. Code § 17203;

5.   For prejudgment interest;

6.   For costs of suit, including attorneys fees (as provided, without limitation, under Cal. Labor Code § 1021.5;

7.   For such other relief the Court deems proper.

December 22, 2014              ROSS & MORRISON

By: _/s/ Andrew D. Morrison_
Gary B. Ross
Andrew D. Morrison
Attorneys for Plaintiff

DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action.

December 22, 2014              ROSS & MORRISON

By: _/s/ Andrew D. Morrison_
Gary B. Ross
Andrew D. Morrison
Attorneys for Plaintiff

SECOND AMENDED COMPLAINT

SAC 12-22-14.wpd