# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 14-6561-GW(AGRx) | Date | March 9, 2015 |
| Title | *Ronald Kopstein v. Michaels Stores, Inc., et al.* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Andrew D. Morrison | Gregory W. Knopp |

**PROCEEDINGS:   DEFENDANT MICHAELS STORES, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT [FED. R. CIV. P. 12(b)(6)] [36]**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Defendant's Motion is GRANTED WITH LEAVE TO AMEND. Plaintiff will have ten days from the date of this order to file a Third Amended Complaint.

A Scheduling Conference is set for April 9, 2015 at 8:30 a.m. Parties will file a Joint Rule 26(f) Report by noon on April 7, 2015.

|  | : | 09 |
|---|---|---|
| Initials of Preparer | JG | |

*Kopstein v. Michaels Stores, Inc.*, Case No. CV-14-6561-GW (AGRx)
Tentative Ruling on Motion to Dismiss Second Amended Complaint

## I. Background

Following rulings on a motion to dismiss the prior version of his complaint, *see* Docket Nos. 21-22, 32, Ronald Kopstein ("Plaintiff") filed his Second Amended Complaint ("SAC") on December 22, 2014.  The SAC contains seven claims for relief: 1) fraud; 2) negligent misrepresentation; 3) promissory estoppel; 4) breach of contract/implied covenant; 5) wrongful termination in violation of public policy; 6) violation of California Labor Code § 1102.5 (retaliation); and 7) unfair business practices (California Business and Professions Code §§ 17200, et seq.).  *See* Docket No. 33.  On January 12, 2015, defendant Michaels Stores, Inc. ("Defendant") moved to dismiss the first, second, third, fourth and seventh causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. Analysis

### A. Applicable Procedural Standard

Under Fed. R. Civ. P. 8(a) a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009).  While the pleading standard of Rule 8 does not require "detailed factual allegations," it demands more than an unadorned, "the-defendant-unlawfully-harmed-me accusation." *See id.*   Thus, a plaintiff's obligation to provide the grounds for his "entitlement to relief" requires more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (finding that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001) (holding that "conclusory allegations of law... are insufficient to defeat a motion to dismiss").

A defendant may move to dismiss some or all claims in a complaint pursuant to Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss under Rule 12(b)(6), the court is limited to the allegations of the complaint. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993); *Farr v. U.S.*, 990 F.2d 451, 454 (9th Cir. 1993).  A court

must take all allegations of material fact as true and construe the allegations in the light most favorable to the plaintiffs. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See id.* Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (finding that a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

B. First, Second and Seventh Claims: Fraud and Deceit, Negligent Misrepresentation and Unfair Business Practices

1. *Omission/Concealment*

Defendant argues that Plaintiff's common law claims for fraud and negligent misrepresentation, and his statutory claim for violation of California Business and Professions Code § 17200 fail for multiple reasons.[1] Before proceeding to those reasons, however, it appears that the Court would be unable to dismiss these three claims because, as Plaintiff observes, Defendant did not address the SAC's omission-based fraud allegations in its opening papers. Specifically, Plaintiff highlights that he has alleged that Defendant concealed or omitted material information about employees' information, including that it considered the vacation amounts on the wage statements to be inaccurate, and that they could not be relied upon. *See SAC* ¶¶ 8, 23. Further, he claims that, unbeknownst to Plaintiff and other employees, Defendant internally calculated

---

[1] Apart from asserting that section 17200 claims based upon that statute's "fraudulent" prong are subject to the pleading requirements of Federal Rule of Civil Procedure 9(b), Defendant's actual arguments do not focus in any way on Plaintiff's section 17200 claim. Defendant has thus not given the Court any reason to differentiate between these three claims in reaching its ruling, whatever that ruling might be.

vacation accrual using a continuous accrual method, arriving at different amounts for the "actual" accrual number. *See id.*

In its Reply, Defendant attempts to come to terms with Plaintiff's omission-based claims. *See* Docket No. 39, at 7:18-8:9. But by that point, it was too late (for purposes of this motion). *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Therefore, unless the Court determines that addressing *parts* of these claims piecemeal is warranted, or that Plaintiff should amend so as to at least comply with Rule 9(b) (*see infra*) to the extent he wishes to rely on affirmative misrepresentations,[2] a denial of the motion as to these claims would appear to be appropriate.

  2. *Rule 9(b)*

If the Court concludes that the above-mentioned omission in Defendant's opening papers does not doom Defendant's motion insofar as it relates to these claims, as a starting point in its argument Defendant contends that all three of these claims are subject to the specificity required by Federal Rule of Civil Procedure 9(b) (the § 17200 claim only when it is based on fraudulent conduct, however). Plaintiff disagrees with this proposition with respect to his claim for negligent misrepresentation. Defendant responds that this Court has already applied Rule 9(b) to Plaintiff's negligent misrepresentation claim. It also suggests that applying Rule 9(b) to that claim makes particular sense where a plaintiff alleges both negligent and intentional misrepresentations based on the same course of conduct.

At a minimum, Defendant is correct that the Court has already applied Rule 9(b) standards to Plaintiff's claim for negligent misrepresentation. *See* Docket No. 21, at pgs. 9-10 of 12. Additionally, as a practical matter, if Plaintiff is going to attempt to plead a fraud claim, there is no question that he is going to have to provide the detail demanded by such a claim. To the extent his negligent misrepresentation claim is based upon the same conduct (as it clearly is here, *see* SAC ¶¶ 35-36), that detail will be present in his allegations if he maintains a fraud claim. Beyond that, the Court could easily conclude on the present allegations that Plaintiff's negligent misrepresentation claim, even if not

---

[2] Having not addressed the concealment/omission theory until its Reply brief, Defendant also did not address whether claims based upon such theories must comply with Rule 9(b).

including a required element of fraud, still is "grounded in fraud" or "sounds in fraud" because it is part of "a unified course of [allegedly] fraudulent conduct." *Vess v. Ciba-Geigy Corp USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."); *see* SAC ¶¶ 35-36; *see also In re Daou Sys., Inc.*, 411 F.3d 1006, 1028 (9th Cir. 2005) ("Rule 9(b) may prove fatal to 1933 Securities Act claims 'grounded in fraud' when the complaint makes a 'wholesale adoption' of the securities fraud allegations for purposes of the Securities Act claims.").

In any event, Plaintiff asserts that he has satisfied Rule 9(b)'s dictates because he alleges

> that there was a discrepancy between officially disseminated vacation time accrual number [*sic*] defendant told to employees (through pay stubs, computer searches, and any other accessible means provided by defendant) and what the company secretly deemed to...be the "actual" vacation time accrual, causing employees, with defendant's knowledge, to unknowingly forfeit vacation time....

Docket No. 38, at 4:1-6. Insofar as the "who, what, when, where and how" requirement is concerned, *see Vess*, 317 F.3d at 1106, the Court would agree that as much detail as can be expected at this stage has been provided at least with respect to alleged falsehoods on wage statements. *See* SAC ¶¶ 5-6, 24-29. The same cannot be said, however, with respect to any statements being repeated by way of computerized confirmations of those statements. Plaintiff has not provided even one specific instance of any statement in that regard. *See id.* ¶ 7 ("[S]tore employees *could* access vacation information through company-provided software.... *When this was done*, the amount reflected was the same as the amount which appeared on the Itemized Wage Statement.") (emphases added); *see also id.* ¶¶ 27-28.[3]

### 3. Falsity

Even if Rule 9(b) is satisfied as to the "who, what, when, where and how"

---

[3] In addition, Defendant points out that Plaintiff never alleges that *he* actually viewed any statements regarding vacation on Defendant's "company-provided software," raising reliance problems in connection with any allegation tied to such alleged representations.

requirement, Defendant also asserts that Plaintiff has not identified *what was false* about any information conveyed by way of wage statements or through company-provided software.[4] *See Vess*, 317 F.3d at 1106. To the extent it is based on the assertion that these materials purported to convey the *total* accrued vacation hours, Defendant notes that Plaintiff has not identified *any* statement that makes that particular representation. If there is some other source of the alleged "total" representation, Defendant argues that Plaintiff has not *specified* it.

Plaintiff responds that the wage statement figure was the only number provided to employees, so it would be strange indeed to infer that it was something other than the total accrual. Plaintiff notes that the number is provided to the employees on an "official form," and that it appears to be, and is understood to be, accrued vacation, and "would have no other function." Docket No. 38, at 5:1-3. He closes the issue by asserting that "[t]here is no other number ever provided to current employees regarding their accrued vacation." *Id.* at 5:4-5.[5]

Defendant replies that Plaintiff's mistaken – perhaps even reasonably mistaken – view of what the number signified does not mean that *Defendant represented* that the number was the *total* accrual. The Court agrees with Defendant on this point. Unless Plaintiff can direct the Court to case law supporting the conclusion that a *plaintiff's* implicit insertion into a representation of additional key facts or terms can serve to render a statement false, or that a fraud, negligent misrepresentation and/or section 17200 claim can be based on a statement that is merely misleading, he may have difficulty in

---

[4] "Under California law, the 'indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (quoting *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996)). "The elements of negligent misrepresentation include: (1) misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the misrepresentation, (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage." *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1200 n.2 (9th Cir. 2001). "[S]ection 17200 does not require a plaintiff to plead all of the elements of fraud," *In re Mattel, Inc.*, 588 F.Supp.2d 1111, 1118 (C.D. Cal. 2008), but it does require actual reliance and existence of a duty to disclose, *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F.Supp.2d 989, 1012 (N.D. Cal. 2012), and that members of the public are likely to be deceived, *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010).

[5] Defendant correctly observes that this assertion is improper to consider on this motion because it is not an allegation made in the SAC. *See also* SAC ¶ 5 (alleging that Defendant's advisement of vacation entitlement/accrual, "through its words and conduct[,]...included, *without limitation*," via itemized wage statements) (emphasis added).

proceeding on these claims to the extent they are based upon Defendant's *affirmative* statements. Until he is able to do so, Plaintiff might have some other claim based upon his interpretation of his wage statements, but to make out a *fraud*-based claim (other than an omission- or concealment-based fraud claim) in the absence of an identifiable false representation would be improper.

>    *4. Intent*

Defendant also argues that Plaintiff has not plausibly pled Defendant's *intent* to induce reliance, though it acknowledges that Plaintiff has at least "mouthed" the requirement in paragraph 31 of the SAC: "Defendants made these representations or omissions with the intent of inducing employees [sic] reliance, including, without limitation, inducing employees to plan vacation scheduling based on accrued vacation information provided to them as reflected on the Itemized Wage Statements." SAC ¶ 31. Paragraph 31 is sufficient, Plaintiff retorts, as there is no reason to provide this number – and no other, *but see* Footnote 5, *supra* – to an employee other than to allow the employee to plan vacation time. Moreover, Plaintiff notes that Defendant's intent – which is particularly within Defendant's own knowledge – may be alleged "generally" under Rule 9(b).

While Defendant acknowledges that Rule 9(b) is not implicated with respect to intent, it argues that Plaintiff cannot satisfy even Rule 8. With respect to Plaintiff's argument that there is no other reason for Defendant to provide its employees with the number, Defendant argues that the allegation must be not just that it intended that Plaintiff rely, but that it intended to defraud Plaintiff (though that is true only with respect to Plaintiff's fraud claim, not his negligent misrepresentation claim, *see* Footnote 4, *supra*). It also points out that it is not *its* burden to explain what *other* intent it could have had, but for Defendant to satisfactorily plead the element under Rule 8.

If it reaches the issue, the Court would agree with Plaintiff that he has adequately pled intent under Rule 8. Certainly it is plausible that, by providing its employees with information on vacation hours, Defendant intended that its employees *have* such information. Knowing that they would *have* such information, it is equally plausible that Defendant intended its employees to *rely* on it in some manner. While Plaintiff's fraud claim also requires that such intention was not only to have the employees rely on the

information, but that they be *defrauded* thereby, Plaintiff is of course correct that such information is particularly within Defendant's possession. Moreover, if one accepts the allegation that the information provided to employees was false (which itself may be problematic, at least with respect to any affirmative misrepresentations, for the reasons addressed *supra*), it is an easy step beyond that to infer intent to defraud.

### 5. Justifiable Reliance

Defendant also believes that Plaintiff has not, and cannot, plead justifiable reliance. It contends that any reliance cannot have been justifiable in light of what Plaintiff knew about Defendant's vacation policy by way of its written policy explaining the daily accrual, subject to a cap. Plaintiff should, in Defendant's view, have been aware that the figure on the wage statement could not have been his entire accrued vacation because the number in that line item increased only once a year.

Defendant also asserts that the allegation of justifiable reliance is "self-serving speculation" because Plaintiff only alleges that employees "would have" arranged their vacation time to avoid the accrual cap, but does not identify any specific vacation opportunities he forewent or any additional vacation time he would have taken. He also does not allege that he had a plan to maximize his use of paid vacation, that any such plan was thwarted, or even that there were times where, if he had requested to take more vacation time, Defendant would have approved his request. To help prove this point, Defendant draws from figures revealing that Plaintiff was only rarely at his accrual cap during the four years prior to his Complaint's filing and that, when he was, he immediately took vacation time. From this, Defendant offers that Plaintiff behaved exactly as he says he would have had he known his actual vacation accrual time, suggesting – at least to Defendant – that Plaintiff fully understood how the policy worked and was not at all misled.

Plaintiff responds that justifiable reliance is properly pled because Defendant's policies are not sufficiently clear for an employee to disregard the numbers he or she is affirmatively provided. In addition, Plaintiff argues that whether reliance is reasonable or justifiable is generally considered a question of fact, unsuitable for decision as a matter of law. Moreover, he asserts that he – or at least other employees, *see* Footnote 3, *supra* – did attempt to perform "independent inquiry of investigation" through verification on

7

company-provided software. *See* SAC ¶ 7.

In the end, while Defendant's arguments might convince a factfinder, the Court does not believe that it can conclusively credit any of them at this procedural stage so as to dismiss Plaintiff's claims for fraud, negligent misrepresentation and/or section 17200 violation.

> [T]he Supreme Court of California has instructed that the question whether a party detrimentally relied on the misrepresentation of another party is properly left to the jury. "Except in the *rare case* where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." But "whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to *only one* conclusion based on the facts."

*City Solutions, Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 840-41 (9th Cir. 2004) (quoting *Alliance Mortg. Co. v. Rothwell*, 10 Cal.4th 1226, 1239 (1995) and *Guido v. Koopman*, 1 Cal.App.4th 837, 843 (1991)). The Court believes that Plaintiff has plausibly pled the element, especially taking into consideration the perception of "mixed messages" on the issue of accrual when comparing Defendant's policies with, for instance, the figures reported on wage statements. As such, the Court rejects Defendant's justifiable reliance-based argument at this stage.

### 6. Damages

Finally, Defendant argues that Plaintiff has not stated any compensable damages for several reasons. First, it asserts that had he taken more vacation time, Plaintiff would not have received any more money during his employment – the amount of vacation pay he would have received while on vacation would have been the same as the amount of salary he earned while actually working. Second, Plaintiff cannot claim that he would have been entitled to more pay at termination, due to additional accrued vacation, because a common law claim based on that theory would be barred by the exclusive remedy of the Labor Code. *See Rojo v. Kliger*, 52 Cal.3d 65, 79 (1990) ("As a general rule, where a statute creates a right that did not exist at common law and provides a comprehensive and detailed remedial scheme for its enforcement, the statutory remedy is exclusive."). Third, Defendant asserts that the loss of leisure time is not compensable, citing cases that support the proposition that a plaintiff must suffer "actual monetary loss"

to recover on a fraud claim. *See, e.g., Alliance Mortg.*, 10 Cal.4th at 1240 ("[U]nless the plaintiff merely seeks to rescind the contract, it must suffer actual monetary loss to recover on a fraud claim."). Last, Defendant highlights that Plaintiff has not alleged how many more vacation days (if any) he might have taken, when he might have taken them, or whether any requests for time off would have been approved, concluding that in the absence of such information, damages are merely speculative.

On the issue of damages, Plaintiff notes that he was terminated with less than maximal accrual, and that he would have been at the maximum, not below it, but for Defendant's fraud. "Therefore, [P]laintiff does allege he would have received more money at termination but for his reliance." Docket No. 38, at 12:3-4. He also argues that the deprivation of his free time – causing that time to instead be devoted to Defendant's business – is compensable as standard tort damages under California Civil Code §§ 1709 and 3333. In fact, he asserts, it would serve to unjustly enrich Defendant if not compensated.

Plaintiff does not respond to Defendant's point that he would not have been entitled to any more pay if he had actually taken more vacation (because the wages he would have earned on vacation would be equal to the wages he earned by working instead). From this, Defendant concludes that Plaintiff "must be arguing that he should have received more money at termination for unused vacation time," Docket No. 39, at 3:19-20, an avenue Defendant asserts that the Court has already foreclosed pursuant to *Rojo. See also id.* at 4:16-21. Defendant also asserts that Plaintiff has not cited any authority that suggests "free time" is compensable, offering that Civil Code sections 1709 and 3333 "say nothing of the sort," and that any "unjust enrichment" theory of damages must go by the wayside because Plaintiff *would have actually been paid* for any time he worked that he would have otherwise chosen to use to go on vacation.

As discussed further below in connection with Plaintiff's promissory estoppel claim, Defendant has not demonstrated to the Court's satisfaction that a claim based upon a theory that Defendant actually prevented Plaintiff from *earning* vacation – that he could then be compensated for at termination or, if not, bring a claim under the Labor Code – would be barred by *Rojo*. Considering that at least one form of damages would appear to be alive and well at this stage, there is no need for the Court to consider or resolve the

9

parties' other arguments on this element at this time.

### C. Third Claim – Promissory Estoppel

"Under California law, the elements of promissory estoppel are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by h[er] reliance." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 792 (9th Cir. 2012); *see also Graham-Sult v. Clainos*, 756 F.3d 724, 749 (9th Cir. 2013) ("Four elements comprise a promissory estoppel claim: (1) a promise, (2) reasonable and (3) foreseeable reliance by the promisee, and (4) injury to the promisee.") (citing *U.S. Ecology, Inc. v. State*, 129 Cal.App.4th 887, 28 Cal.Rptr.3d 894, 905 (2005)). Defendant argues that Plaintiff cannot sustain a promissory estoppel claim here because he admits that Defendant has fully performed the obligation taken on by the alleged promise – in other words, in its opening papers Defendant appears to be addressing the "injury" element of the claim. It points to paragraph 22 of the SAC, which includes the allegation that the amount of vacation time listed on Plaintiff's wage statements "understated" the amount Defendant calculated internally, and which was his *actual* amount of vacation time. *See* SAC ¶ 22 ("The amount of vacation stated on the employees [*sic*] itemized wage statement…was not accurate according to defendant's internal calculations…, and specifically understated the accrual which defendant calculated internally.").

Plaintiff responds that "the promise alleged is not that defendant would deliver whatever number was provided, but rather, that the number provided be an accurate and reliable statement of what the employee had at that time, for purposes of planning vacation time." Docket No. 38, at 13:6-9 (citing SAC ¶¶ 38, 5-7). Citing *Jolley v. Chase Home Fin., LLC*, 213 Cal.App.4th 872, 897 (2013) (concluding that there was a triable issue of fact whether there was liability under a promissory estoppel theory for plaintiff's reliance causing him to borrow from friends and family to finish construction on a house renovation) and *Toscano v. Greene Music*, 124 Cal.App.4th 685, 691 (2004) (holding that "lost future wages from [a] former at-will employer are recoverable under a promissory estoppel theory as long as they are not speculative or remote, and are supported by substantial evidence"), Plaintiff adds that damages for promissory estoppel are not

limited to enforcement of the promise, and that, as the result of Defendant's promise, employees unknowingly forfeited vacation and got less vacation time and pay. *See* 1 Witkin, <u>Summary of California Law: Contracts</u> (10th ed.) ("The *usual* remedy in promissory estoppel cases is enforcement of the promise, and the damages are measured by the extent of the obligation assumed and not performed...[But,] relief may be restitution, or damages or specific relief measured by the extent of the promisee's reliance rather than by the terms of the promise.") (emphasis added); *see also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1106 n.13 (9th Cir. 2009) ("One area where promissory estoppel does vary ordinary contract principles is in the damages. Although 'full-scale enforcement by normal remedies is often appropriate,' some courts have awarded damages to compensate the promisee for his expected benefit (ordinary contract damages), while others have awarded damages to compensate the promisee for his detrimental reliance.") (omitting citations).

Defendant combines its reply on the promissory estoppel claim with its reply on Plaintiff's contract/implied covenant claims. Its first point appears more directed to the contract-based claims, asserting, in essence, that Plaintiff has not located the alleged promise in any specific documents or communications. Whether or not he is required to do so, at least at the pleading stage, for purposes of his contract-based claims – and there would seem to be a question in that regard, as explained below – Defendant has not presented any authority requiring that detail at the pleading stage for a promissory estoppel claim. Moreover, considering that Defendant's opening argument on this point *as to this claim* appeared to have been limited to the injury element, switching to the "promise" element in its Reply would be improper. *See Zamani*, 491 F.3d at 997.

Then, avoiding the question of whether damages for a promissory estoppel claim can consist of something other than enforcement of the promise itself, Defendant's second point in reply with regards to this claim is that any other harm Plaintiff alleges is not compensable. According to Defendant's view, Plaintiff: 1) could not have *earned more* money by *taking* additional vacation than she already received in compensation for her work (and therefore *lost* money by *not* having been able to take vacation – and working instead – due to Defendant's alleged failed promise); 2) cannot make a claim for money that would have been owed him at termination because that claim would have to

be brought pursuant to the Labor Code; and 3) and cannot base a claim on lost vacation time because it would be too speculative, even assuming it would be compensable.

Whatever the Court might think of Defendant's first and third responses mentioned above, the second, while tempting in its simplicity, appears problematic. A Labor Code claim under section 227.3 is for non-payment at termination of vacation *actually earned*, or "vested." Here, Plaintiff alleges that he was prevented from properly earning – or at least managing so as to maximize the vesting of – his vacation time because of his reliance on what he alleges was a promise from Defendant. In other words, Defendant's actions prevented Plaintiff from ever actually being in a position to receive a further payment at termination or, alternatively, make a proper claim under Labor Code § 227.3. If the Court understands and characterizes Plaintiff's theory properly, Defendant has not sufficiently explained at this time why a claim in that regard cannot be pursued by way of a promissory estoppel claim.

For the above-stated reasons, the Court would deny Defendant's motion insofar as Plaintiff's promissory estoppel claim is concerned.

D. Fourth Cause of Action: Breach of Contract/Implied Covenant

Relying on the fact that the Court found Plaintiff's contract-based claims too uncertain as they were pled in the First Amended Complaint, *see* Docket No. 21, at pg. 11 of 12, Defendant emphasizes that the SAC's same claims are nearly identical, though it concedes that Plaintiff has added the assertion that the contract included, as a term, that "the accrual of vacation would be accurately communicated to employees, and that the vacation amounts in the Itemized Wage Statements were accurate." SAC ¶ 43. Defendant also repeats its argument from the previous dismissal motion that Plaintiff's part-written, part-oral and/or part-implied-in-fact contract is impossible and impermissible, again citing *Wal-Noon Corp. v. Hill*, 45 Cal.App.3d 605, 613 (1975). Defendant also complains that Plaintiff has not identified what specifically from the exhibits referenced in the SAC made up his alleged part-written, part-oral and/or part-implied-in-fact contract. It emphasizes that Plaintiff has not pointed to any actual document or communication that contains the single term Plaintiff has now alleged, and that Defendant allegedly breached. Moreover, it asserts, Plaintiff has not identified any term stating that the amount listed on the wage statements would be his *total* vacation

accrual.

Plaintiff asserts that it has sufficiently pleaded the existence of the contract in question, "as part of the overall employment contract between the parties." Docket No. 38, at 13:26-28 (citing SAC ¶ 14).[6] Plaintiff also argues that Defendant's contention on this point overlooks numerous other alterations of the allegations in the First Amended Complaint, in the form of paragraphs 5-8 of the SAC. *Wal-Noon*, Plaintiff asserts, rules out only *conflicting* express and implied contractual promises. Finally, Plaintiff sums up the origin of the alleged contractual promise as resulting from written policies, itemized wage statements and company practices/conduct. Defendant responds that these were the same materials the Court found could not support a sufficiently-identified contractual term in connection with the motion to dismiss the First Amended Complaint.

Whether or not Plaintiff will ultimately be able to *prove* the existence of a contract containing the term he alleges Defendant breached, he has sufficiently *alleged* it for present purposes. Defendant's demands for more specificity concerning the origination or location of this term appears to be an expectation of something akin to "Rule 9(b)-light," and it has not substantiated its expectation in this regard by way of citation to any controlling authority. Insofar as *Wal-Noon* is concerned, the Court agrees with Plaintiff – the principle Defendant cites it for applies where there are alleged to be dueling contracts, not the allegation of one part-written, part-oral, part-implied contract. *See Wal-Noon*, 45 Cal.App.3d at 612 ("There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time."). Finally, though Plaintiff may not have identified any term indicating that the amount listed on the wage statements would be the *total* accrual, he did allege that the term was that the figures would be *accurate, see id.* ¶ 43, and because they were not, Defendant breached the alleged contract in that respect.

The Court would deny the motion as to this/these claim/claims.

E. Conclusion

If the motion is granted, Defendant is of the view that leave to amend should be denied, as is allowed where a plaintiff has previously been afforded the opportunity to

---

[6] Defendant correctly notes that paragraph 14 of the SAC only contains the proposed class definition and does not relate to an alleged contract.

amend and still has not cured identified defects.   Plaintiff nevertheless requests the opportunity to amend further if the Court grants any part of the motion.[7]   The Court is currently inclined to dismiss certain aspects of Plaintiff's fraud, negligent misrepresentation and section 17200 claims; but any such dismissal would be with leave to amend.

---

[7] Plaintiff relies in part on what he perceives as recent "emphasis" from the Supreme Court that courts should "freely give" leave, in the form of the Supreme Court's statement in *Johnson v. City of Shelby*, 135 S.Ct. 346, 346 (2014), that federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."   Plaintiff cannot rely on *Johnson* for his desired point (which, in and of itself – that courts should freely give leave to amend – is as unobjectionable as it is unexceptional).   In that case, the Supreme Court was simply correcting a lower court that had granted summary judgment against plaintiffs because they had not invoked 42 U.S.C. § 1983 in their complaint. *See id.*   In fact, the Supreme Court specifically distinguished the case before it from the fact-based deficiencies addressed by the *Twombly/Iqbal* line of cases. *See id.* at 347 ("Our decisions in [*Twombly*] and [*Iqbal*] are not in point, for they concern the factual allegations a complaint must contain to survive a motion to dismiss.")